IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| CYNTHIA G. SMITH, *<br>Plaintiff, | |
| v. | Civil Action No. 10-cv-02310-AW |
| SULLIVAN MCGRAW, *et al.*,<br>Defendants. | |

**Memorandum Opinion**

This case began as a fairly straightforward defamation action brought by Plaintiff Cynthia Smith, *pro se*, against several Defendants from her former church community. It has since transformed into a maze of motions, proposed amended complaints (often in fragmentary form and not properly filed), and an ever-changing list of defendants. Some of Plaintiff's "motions" are not separately filed motions at all, but rather are incorporated within the responsive memoranda submitted in connection with other motions. As a result, Defendants and the Court have been required to sort through an unnecessary tangle of papers in order to discern the various positions that Plaintiff seeks to advance. In the future, the Court expects compliance with the local rules of this jurisdiction regarding how to properly file motions and a greater degree of care in crafting the documents submitted to the Court.

That said, the matters before the Court are the following: (1) Defendants' motion to dismiss the Amended Complaint, Doc. No. 7, (2) Plaintiff's counter-motions in response to Defendants' motion to dismiss, Doc. No. 14, (3) Plaintiff's motion for leave to file a Second Amended Complaint, Doc. No. 24, (4) Plaintiff's motions for extension of time to file her reply

1

in support of her counter-motions, Doc. Nos. 25, 27, (5) Plaintiff's motion to drop or dismiss Parties, Doc. No. 28, and (6) Defendants' motion to amend a caption to one of their earlier filings, Doc. No. 32. The Court has reviewed the motion papers submitted by the Parties and finds that no hearing is necessary. *See* Md. Loc. R. 105(6) (D. Md. 2010). For the reasons that follow, the Court will grant Plaintiff's motions for extension of time, grant her motion for leave to file a Second Amended Complaint, grant in part and deny in part her motion to drop or dismiss Parties, deny her other motions, and deny Defendants' motion to dismiss.

I.  **FACTUAL & PROCEDURAL BACKGROUND**

The following facts are drawn from the proposed Second Amended Complaint (hereinafter "Complaint" or "Compl.," except when comparing different versions of the Complaint)[1] and construed in the light most favorable to the Plaintiff.[2] Plaintiff describes herself as a "lay Bible teacher/preacher who has planned, for the past [35] years, to enter full time ministry." Compl. ¶ 21. She has been separated from her husband since 2001, but she has not sought a divorce due to concerns that it might disqualify her for ordination as a pastor within her religious denomination: the Assemblies of God. During those years, she did not pursue any

---

[1] Although Defendant's motion to dismiss was directed at the First Amended Complaint, it is most efficient to evaluate the merits of the motion with reference to the proposed Second Amended Complaint instead. Like the First Amended Complaint, the proposed Second Amended Complaint still contains many conclusory statements of law and subjective inferences, omitting the facts that led Plaintiff to draw those inferences. *See infra.* However, the newer version is a substantial improvement over the First Amended Complaint in that regard. Rather than going through the unnecessary exercise of (possibly) dismissing the First Amended Complaint and then evaluating whether the proposed Second Amended Complaint would fare any better, it is most expeditious to skip directly to the second step and consider whether Plaintiff's best and most up-to-date version of the Complaint can survive a motion to dismiss.

[2] However, as the Court will explain in the standard of review section below, *see infra*, there is a different between construing alleged facts in the light most favorable to a plaintiff—which is proper—and deferring to a plaintiff's conclusions of law or baseless factual inferences—which is not proper. The Court's statement of facts includes only the facts reported in the Complaint, not conclusions of law—*e.g.*, "Sullivan McGraw and Jacqueline McGraw knew that the statements they planned to make were defamatory," Compl. ¶ 46—or allegations that reflect Plaintiff's own interpretation of the facts, rather than the facts themselves—*e.g.*, "Jacqueline McGraw seemed to interpret Plaintiff's avoidance of Sullivan McGraw in her presence as evidence of Plaintiff's unclean motives," *id.* ¶ 28.

extra-marital sexual relationships; instead, she cultivated a "reputation for honesty, personal integrity, and sexual purity." *Id.* ¶ 27.

In November 2007, Plaintiff met with Sullivan McGraw, the senior pastor of the New Life Worship Center ("Worship Center"), to seek his advice and possible mentorship to advance her goal of becoming a pastor. He indicated that he would be willing to "oversee her ministry" by offering spiritual and financial support; in return, he requested a share of the proceeds from any church she might later create. *Id.* ¶ 34. As part of their new relationship, he also asked Plaintiff to join his church, complete certain classes, and contribute 10 percent of her income to the church. Plaintiff accepted the offer, with the understanding that she would begin the process the following year, after addressing certain family matters.

Approximately 11 months later, she began to attend services at the Worship Center. During the first Sunday service that Plaintiff attended, Mr. McGraw, while delivering his sermon, "1) performed jumping jacks; 2) performed [sit-ups]; 3) performed push-ups; and 4) . . . split his pants." *Id.* ¶ 47. He called upon other men to do sit-ups and remarked that some older men are still strong. Plaintiff worried that Mr. McGraw's wife, Jacqueline, might interpret her husband's actions as efforts to show off for Plaintiff. Plaintiff took steps to head off this perception before it took root by, for example, greeting Mrs. McGraw instead of Mr. McGraw when they would stand together in a greeting line. Nonetheless, according to Plaintiff, Mrs. McGraw grew jealous and "spoke in a negative manner about Plaintiff" to other members of the church. *Id.* ¶ 29; *see id.* ¶ 32.

During a subsequent sermon, Mr. McGraw asked members of the audience to smile. A male church member sitting next to Plaintiff said to her, "[y]ou know, it's you he's talking about.

He told some of the guys that you never smile and he wants to see whether anything is wrong with your teeth." *Id.* ¶ 30.

Despite the difficulties Plaintiff was experiencing with the McGraws, she began to "experience a deep joy in God[,] which she expressed by performing solo dances characterized by rapid foot movements." *Id.* ¶ 34. At first, she sought to hide her dancing. However, a friendly worship leader urged her to come to the front of the church when dancing, and Plaintiff complied with the request. Some members of the congregation appreciated the dances, but Jacqueline McGraw and her friends criticized Plaintiff's conduct. *Id.* ¶ 37.

At the conclusion of a service that took place on or about August 9, 2009, Plaintiff walked toward the back of the church where Mr. McGraw was greeting members. As she reached out her arms to hug Mr. McGraw as a greeting, "the rubber sole on her new high heels failed to slide along the flooring, causing her to trip and fall forward slightly." *Id.* ¶ 38. Mrs. McGraw did not see the episode, but several of her friends did witness what took place, and they reported the occurrence to her.

According to the Complaint, "[b]etween August 9, 2009 and August 22, 2009, Defendants Sullivan McGraw, Jacqueline McGraw[,] along with certain wives of church board members, conspired to publicly accuse plaintiff of sexually molesting Defendant Sullivan McGraw." *Id.* ¶ 41. During that time, they prepared a pre-sermon skit entitled "The Party Crasher," *id.* ¶ 43, and they explained to skit participants (and other church members) that Plaintiff was to be the unnamed subject of the skit. The fictitious setting for the two-minute skit is a party room in which a group of friends have gathered together. Their gathering is interrupted when the main character of the skit—the party crasher—bursts into the room and performs a solo dance characterized by rapid foot movements. The dancer role was played by a male actor.

At the morning service on August 23, 2009, The Party Crasher was performed in front of the 800-person congregation immediately before Mr. McGraw's sermon. The Complaint avers that "a significant number of members in attendance recognized Plaintiff as the '*Party Crasher*.'" *Id.* ¶ 55. When introducing his sermon, Mr. McGraw stated that the party crasher was "certainly a great dancer." *Id.* ¶ 57. He then "walked from the front of the church, stood next to Plaintiff, and stated . . . that a female member had intentionally rubbed her breasts against him during a recent meet and greet." *Id.* ¶ 59. He noted the Mrs. McGraw was not with him at the time the event occurred, but had been informed of it later. He explained "that the member who did this purports to attend church in order to worship God[,] but in fact, attends church[] in order to seduce men," and he directed "that church members should avoid contact with the female member who had molested him." *Id.* Before concluding his sermon, he returned to the front of the church and asked Mrs. McGraw to come over to him and visually demonstrate the actions of the transgressing woman. Mrs. McGraw "stood next to Sullivan McGraw, leaned forward and rubbed her breasts back and forth rapidly against her husband's chest." *Id.* ¶ 58.

Plaintiff alleges that Mr. and Mrs. McGraw intended these statements and actions as references to the Plaintiff and that some members of the congregation did in fact interpret the statements as referring to Plaintiff. Plaintiff tentatively claims that the sermon was "recorded, duplicated, rebroadcast online and stored for future distribution." *Id.* ¶ 66.

A church picnic immediately followed the service, and Plaintiff helped serve the food. Of those she encountered, the "vast majority of members ignored Plaintiff, sneered at Plaintiff, or spoke to Plaintiff in a harsh, judgmental manner." *Id.* ¶ 71. Of the hundreds of church members in attendance, "between three and five people spoke to Plaintiff in a friendly manner during the course of the picnic." *Id.* ¶ 77

Several days later, Plaintiff arranged a telephone conference with the McGraws. Plaintiff did not reveal her suspicion that the sermon referred to herself; she simply asked whether they "fully understood how much damage the statements . . . could be to a female and whether they had spoken with the woman described in the sermon beforehand." *Id.* ¶ 89. Mr. McGraw denied that the sermon was based on an actual person or event. Plaintiff reminded him of his statement that an actual person had rubbed her breasts against him and that Mrs. McGraw had learned about the incident from witnesses. Plaintiff told them that it was "wrong to make the statements about a woman's sexual purity without making certain that the statements were accurate." *Id.* ¶ 92. Mr. McGraw said, "[a]sk my wife. Ask her my wife [sic] whether she spoke with the person first. Jacqueline, you answer her question." *Id.* ¶ 93. Plaintiff asked why Mrs. McGraw's friends stood and cheered when Mr. McGraw denigrated the unidentified woman. Mr. McGraw replied, "[m]aybe they had problems with the person too." *Id.* ¶ 95.

Plaintiff seeks damages for her emotional distress and for damage to her reputation. She alleges that over time, she has "created for herself a commercial identity[,] which includes a reputation for sexual purity," *id.* ¶ 122, and that "[m]aintaining this identity has an essential financial value to Plaintiff because she intends to earn her living through preaching[,] and maintaining a reputation for sexual purity is an essential qualification for every female preacher," *id.* ¶ 124.

In October 2009, Plaintiff wrote a letter to Mr. McGraw, demanding a retraction. He did not reply. She filed this lawsuit in August 2010, seeking recovery on theories of defamation *per quod*, defamation *per se*, and invasion of privacy. The case is currently before the Court on Defendant's motion to dismiss for failure to state a claim and several related matters.

## II. STANDARD OF REVIEW

The purpose of motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is "to test the sufficiency of [the] complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, the complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2).

In its determination, the Court must "accept the well-pleaded allegations of the complaint as true," *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and "must construe factual allegations in the light most favorable to the plaintiff," *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court should not, however, accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), "legal conclusion[s] couched as . . . factual allegation[s]," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

In resolving a motion to dismiss, the Court should proceed in two steps. First, the Court should determine which allegations in the Complaint are factual allegations entitled to deference, and which are mere legal conclusions that receive no deference. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

**III. ANALYSIS**

The two central motions before the Court are Defendants' motion to dismiss the Amended Complaint, *see* Doc. No. 7, and Plaintiff's motion for leave to file a second Amended Complaint, *see* Doc. No. 24. The Court will first resolve a number of secondary motions, and then proceed to jointly address the primary motions.

A. Plaintiff's Motions for Leave to Amend Complaint

In response to Defendant's motion to dismiss, Plaintiff filed a series of counter-motions. *See* Doc. No. 14. The first of these is a motion for leave to file another amended complaint. Plaintiff attached a proposed amended copy of the "Vicarious Liability" section of the Complaint, but alluded that she wished to make other (unidentified) changes to other sections of the Complaint as well. In other filings, Plaintiff has also expressed her intention to amend the Complaint; however, on those occasions, she did not file a motion for leave to amend, much less present the Court with a copy of a proposed Amended Complaint. *See, e.g.*, Doc. No. 15 at 9-10 (requesting to amend the Complaint to add allegations regarding the audience's reaction to Mr. McGraw's accusatory sermon).

These vague allusions to Plaintiff's desire to amend the Complaint are insufficient. The Court has rules that govern how amendments should be requested, *see* Md. Loc. R. 103(6) (D. Md. 2010), and it is essential that all Parties abide by these rules in order to keep the litigation process orderly and fair.

Fortunately, Plaintiff's most recent motion for leave to file a Second Amended Complaint, Doc. No. 24, comes closer to complying with the Local Rules and, just as

importantly, it places the Defendants and the Court on notice of what Plaintiff's revised complaint would look like. Rather than independently evaluate the merits of each fragmentary request for leave to file amendments to the Complaint, the Court will focus on the comprehensively redrafted proposal for a Second Amended Complaint contained in Document 24. All other motions for leave to amend will be denied as moot, and the Court will defer consideration of the primary motion for leave to amend until it considers Defendant's motion to dismiss.[3]

B. Plaintiff's Motion to Strike

Plaintiff's next counter-motion asks the Court to strike "every statement or inference in Defendant's [sic] Motion to Dismiss which urges the Court to consider an alternative version of the facts presented in Plaintiff's Complaint" and also to strike Defendants' "challenge of Defendants' capacity to be sued." Doc. No. 14 at 1-2. This motion is entirely unnecessary: insofar as Defendants' motion to dismiss lacks merit, the Court will deny it, and insofar as it has merit, the Court will grant it. Evaluating Defendant's motion to dismiss under the rubric of a separate motion to strike adds unnecessary procedural confusion to this litigation. The motion is denied.

C. Plaintiff's Motion to Consider Motion to Dismiss as a Motion for a More Definite Statement

---

[3] The motions will be considered together because the standard for granting leave to amend parallels, in relevant part, the standard for a motion to dismiss. *See, e.g.*, *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986) ("Leave to amend should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face.").

Plaintiff's counter-motions also include a motion to convert Defendants' motion to dismiss into a motion for a more definite statement. Defendants correctly point out that their motion does not challenge the ambiguity of the Complaint, but rather the inadequacy of the allegations to state a viable legal claim. It is properly before the Court as a motion to dismiss, and Plaintiff's counter-motion will be denied.

D. Plaintiff's Motion to Join Necessary Parties

Plaintiff's next counter-motion asks the Court to hold that New Life Worship Center, Inc. must be joined as a "required party" within the meaning of Rule 19 of the Federal Rules of Civil Procedure. *See* Doc. No. 14. Plaintiff argues that "New Life Worship Center" was listed as a Party in the original Complaint, and that she had not intended to omit it in the Amended Complaint—she had sought to add "New Life Worship Center Board" and "New Life Worship Center Membership," but not to dismiss the Worship Center as an organization. Thus, Plaintiff urges the Court to utilize Rule 19 to restore New Life Worship Center, Inc. as a Defendant.[4]

However, Rule 19 is not a flexible equitable device for adding parties whenever justice so requires. *Compare* Fed. R. Civ. P. 15(a)(2). Rather, it only applies to narrow, enumerated situations, such as when, "in [a person's] absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). Plaintiff has not attempted to argue that the elements of Rule 19 are satisfied, and it appears that the Rule does not apply. Thus, Plaintiff's motion will be denied. This does not mean that Plaintiff cannot add New Life Worship Center,

---

[4] Alternatively, Plaintiff moves the Court to construe the First Amended Complaint as never having dropped New Life Worship Center as a Defendant in the first place. *See* Doc. No. 24. For the reasons stated below, *see supra* note 5, the Court will decline to resolve these contentions for the time being in order to give the New Life Worship Center an opportunity to present its position, if it wishes to do so.

Inc. as a Party; indeed, she seeks to do so in the proposed Second Amended Complaint.[5] However, she must follow the usual, amendment-driven process for doing so, rather than the exceptional mechanism of Rule 19.

E. Plaintiff's Motion to Drop or Dismiss Parties

Plaintiff's final motion requests that the Court dismiss two Defendants listed in the First Amended Complaint—the church Board and Membership of the New Life Worship Center—without prejudice. Plaintiff also asks the Court to hold that, if Plaintiff later decides to pursue claims against individual church members, the statute of limitations will not bar such claims.

The Court will grant in part and deny in part Plaintiff's motion. First, one of the grounds for dismissal contained in Defendants' motion to dismiss is lack of federal subject-matter jurisdiction over the two Defendants in question. When dismissal is premised on lack of federal jurisdiction, it is without prejudice to Plaintiff's right to re-file the action in a different forum. Thus, it is proper to dismiss claims as to these Defendants without prejudice.[6]

However, it would be improper for the Court to resolve statute-of-limitations issues as to Parties who are not currently before the Court. If Plaintiff later amends the Complaint to add new Parties, and those Parties move to dismiss on the basis of the statute of limitations, that will be the appropriate time to decide such questions.

F. Plaintiff's Motions for Extension of Time

---

[5] In permitting the Plaintiff to amend the Complaint to add New Life Worship Center, Inc. as a Defendant, the Court does not comment on whether the amendment relates back to the time the original Complaint was filed for purposes of the statute of limitations. That issue should be addressed if and when it comes before the Court on a motion filed by New Life Worship Center, Inc.
[6] Jurisdiction is not the only basis upon which Defendants urge dismissal of the Complaint as to the church Board and Membership, but if the Court were to analyze their motion to dismiss, it would have to resolve the jurisdictional issue before analyzing any merits questions that might potentially justify dismissal with prejudice.

Plaintiff filed two motions for an extension of time for filing her reply in support of her counter-motions. *See* Doc. Nos. 25, 27. The motions were unopposed, the requested extensions were small and reasonable, and Plaintiff filed her reply within the window of time that she requested. Thus, the motions will be granted.

G. Defendants' Motion to Amend Caption

On March 14, 2011, Defendants filed a document entitled "Response to Plaintiff's Reply Memorandum . . . ." Doc. No. 29. This caption suggested that the document was a sur-reply, and because sur-reply memoranda are generally not authorized under the Maryland Local Rules, the Court contacted Defendants to request that the document be re-filed as a motion for leave to file a sur-reply (or in some other form that would not run afoul of the Local Rules). Now that the Court has had the opportunity to review the procedural history of this case in greater depth, it is clear why Defendants filed their memorandum in this way: Plaintiff's reply memorandum incorporated a crucial new motion for leave to file a Second Amended Complaint, and Defendants merely sought to file their opposition in the same way they would for any other motion.

Nonetheless, in order to oblige the concern that the Court expressed before reviewing the record, Defendants filed a motion to amend the caption of Document 29 so that, instead of resembling the caption of a sur-reply, it would read: "Opposition to Plaintiff's Motion for Leave to File Second Amended Complaint and Opposition to Motion to Drop or Dismiss Parties." Doc. No. 32 at 5. The motion is granted.

H. Defendants' Motion to Dismiss

1. Defamation

To state a claim for defamation, Plaintiff must generally satisfy the following elements: "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Offen v. Brenner*, 935 A.2d 719, 723-24 (Md. 2007). A defamatory statement is one that "expose[s] a person to 'public scorn, hatred, contempt or ridicule'" and is therefore "injurious to his reputation." *Embrey v. Holly*, 429 A.2d 251, 258 (Md. Ct. Spec. App. 1981) (quoting *Thompson v. Upton*, 146 A.2d 880, 883 (Md. 1958)), *rev'd in part on other grounds*, 442 A.2d 966 (Md. 1982).

Maryland law continues to recognize a distinction between defamation *per se* and defamation *per quod*. Words or conduct are defamatory *per se* when "their injurious character is a self-evident fact of common knowledge of which the court takes judicial notice and need not be pleaded or proved." *M & S Furniture Sales Co. v. Edward J. DeBartolo Corp.*, 241 A.2d 126, 128 (Md. 1968). By contrast, communications are defamatory *per quod* if "the injurious effect must be established by allegations and proof of special damage." *Id.* The question of whether an allegedly defamatory statement constitutes defamation *per se* is a "question of law for the Court"; if, however, the Court concludes that the statement is not defamatory *per se*, it is for the jury to determine "'whether the statement does, in fact, carry defamatory meaning.'" *Samuels v. Tschechtelin*, 763 A.2d 209, 244-45 (Md. Ct. Spec. App. 2000) (quoting *Shapiro v. Massengill*, 661 A.2d 202, 217 (Md. Ct. Spec. App. 1995)).

Defendants' first argument is that the Complaint fails to identify with adequate precision the allegedly defamatory statements upon which it is based. In order for the Court to determine whether a statement is defamatory, it is essential for the plaintiff to describe the actual statements or conduct that give rise to the claims. In reviewing a motion to dismiss, the Court must defer to the well-pleaded facts in the Complaint, but not to the legal conclusions or unsupported factual inferences Plaintiff attempts to draw. *See Iqbal*, 129 S. Ct. at 1950. Thus, a defamation complaint must contain more than the plaintiff's personal conclusion that she was the victim of defamatory statements.

Even in the most recent version of the Complaint, many of Plaintiff's allegations simply report her own interpretation of the facts, rather than the facts themselves. For instance, Plaintiff alleges that "Jacqueline McGraw seemed to interpret Plaintiff's avoidance of Sullivan McGraw in her presence as evidence of Plaintiff's unclean motives," and that "Jacqueline McGraw also spoke in a negative manner about Plaintiff to the female church leaders." Compl. ¶¶ 28-29. These statements constitute the Plaintiff's own opinions about potentially ambiguous events. They do not provide the Court with insight into precisely what Mrs. McGraw was saying about Plaintiff. Because these sorts of allegations report Plaintiff's own conclusions, not the well-pleaded facts that give rise to those conclusions, the Court cannot credit them under *Iqbal*.

However, the Second Amended Complaint is more specific when discussing the most salient facts, namely, those relating to Mr. McGraw's sermon. Plaintiff alleges that Mr. McGraw "walked from the front of the church, stood next to Plaintiff, and stated[:] . . . that a female member had intentionally rubbed her breasts against him during a recent meet and greet"; that Mrs. McGraw was not present to witness the incident, but was later informed of it by her friends; that the woman who did this to him "purports to attend church in order to worship God[,] but in

fact, attends church[] in order to seduce men"; and that church members "should avoid contact" with the woman. Compl. ¶ 59. Unlike the First Amended Complaint, the Second Amended Complaint clearly indicates that these are actual statements delivered by the pastor during his sermon, not Plaintiff's own interpretation of those statements. Thus, Defendants' first contention is unavailing.

Insofar as these statements refer to Plaintiff, a reasonable juror could find that the statements expose her to "public scorn, hatred, contempt or ridicule," *Thompson*, 146 A.2d at 883, by accusing her, in front of hundreds of people, of publicly seducing a married man. The only remaining questions, therefore, are: (1) whether the circumstances of the sermon "'reasonably give rise to the conclusion that there is a particular reference' to the [Plaintiff]," *AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1005 (4th Cir. 1990) (quoting *Church of Scientology of Cal. v. Flynn*, 744 F.2d 694, 697 n.5 (9th Cir. 1984)), and (2) whether the Complaint adequately pleads defamation *per se*.

First, the Court holds that the facts as alleged in the Complaint are adequate to identify Plaintiff as the subject of the sermon. The Complaint alleges that Mr. and Mrs. McGraw had told the participants in the Party Crasher skit and other church members that the skit (and presumably the sermon that was to follow it) referred to Plaintiff. The skit, which was performed prior to Mr. McGraw's August 23 sermon, allegedly featured an obnoxious and unwelcome newcomer whose defining attribute is dancing with rapid movement of the feet. According to Plaintiff, she, too, was relatively new to the church and, like the party-crasher character in the skit, she had also performed dances characterized by rapid foot movements that had been witnessed by members of the congregation.

Defendants rightly point out that the skit, taken alone, does not appear to communicate any defamatory statements. However, the skit is nonetheless significant in that it potentially reminds the audience of the Plaintiff and psychologically prepares them to link Plaintiff to the unidentified woman in the upcoming sermon.

The accusations that Mr. McGraw allegedly made during the sermon did not explicitly name the Plaintiff as the perpetrator. Still, the Complaint alleges that he left the front of the church and stood near Plaintiff when delivering his indictment of the anonymous woman. Furthermore, according to the Complaint, his words provided several useful contextual clues that would potentially enable at least some members of the audience to narrow down the list of possible perpetrators. He indicated that the episode happened during a recent church meet and greet, and he stated that his wife was not with him at the time. If members of the congregation had witnessed the August 9 incident in which Plaintiff tripped into the pastor during the meet and greet, they might reasonably identify the Plaintiff as the subject of the pastor's comments.

Finally, the Complaint adequately states a claim for defamation *per se*. It is "self-evident," and "need not be pleaded or proved," that it is "injurious" to someone's reputation to be accused, in front of an audience of hundreds of people, of attempting to publicly seduce a married man. *M & S Furniture Sales Co.*, 241 A.2d at 128. The self-evident character of the injury is heightened by the fact that Mr. McGraw allegedly urged the church community to shun the accused woman. Furthermore, the sermon arguably damaged not only her personal reputation, but also her business reputation, as she was planning to enter full-time ministry within the denomination of that church in the near future. Thus, the Complaint includes facts which, if proven true, could lead the Court to find that Mr. McGraw's sermon qualifies as defamation *per se*. *Cf. Samuels*, 763 A.2d at 244-45 (stating that the question of whether a

16

statement constitutes defamation *per se* is a question for the Court, not the jury). Thus, Plaintiff's claims for defamation and defamation *per se* should not be dismissed at this stage.

2. Invasion of Privacy

The elements of a claim for false-light invasion of privacy are: "(1) publicity in a false light before the public; (2) which a reasonable person would find highly offensive; and (3) that the actor had knowledge of or acted in reckless disregard of the publicized matter placing plaintiff in a false light." *Cambridge Tit. Co. v. Transam. Tit. Ins. Co.*, 817 F. Supp. 1263, 1278 (D. Md. 1992).

Defendants argue that the privacy claim should be dismissed for essentially the same reason as the defamation claims: the Complaint is too short on detail regarding the nature and contents of the allegedly offensive statements and the relationship of those statements to the Plaintiff. As the Court explained above, the Second Amended Complaint adequately describes the relevant statements of the sermon, why those statements are reasonably offensive to her, and how they relate to her. Plaintiff has adequately alleged that those statements were publicized to an audience of hundreds of people, that the statements were not true, and that Mr. McGraw recklessly publicized the material without discussing the incident with her to see if her actions were intentional or accidental. Thus, the claim for false-light invasion of privacy should not be dismissed.

3. Vicarious Liability

Defendants have also moved to dismiss the organizational Defendants listed in the First Amended Complaint: the Board and Membership of the church. As explained above, both Parties

17

agree that these entities should be dismissed, and the Court concluded that dismissal should be without prejudice. The Second Amended Complaint does not include either entity in the caption as a Defendant.

The Second Amended Complaint does include a claim for vicarious liability, but it is brought exclusively against a new Defendant that was not listed in the First Amended Complaint: the New Life Worship Center, Inc. Any issue as to that Defendant is not properly before the Court at this time. Thus, Defendants' motion to dismiss is denied.

## IV. CONCLUSION

A separate order will follow memorializing the various decisions rendered in this opinion.

| April 27, 2011 | /s/ |
|---|---|
| Date | Alexander Williams, Jr. |
| | United States District Judge |