IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| | * | |
| CYNTHIA G. SMITH, | * | |
| Plaintiff, | * | |
| | * | |
| | * | |
| v. | * | Civil Action No. 10-cv-02310-AW |
| | * | |
| SULLIVAN MCGRAW, *et al.*, | * | |
| Defendants. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Memorandum Opinion**

As the Court noted in its April 27, 2011 Memorandum Opinion denying Defendants'

Motion to Dismiss, "[t]his case began as a fairly straightforward defamation action brought by

Plaintiff Cynthia Smith, *pro se*, against several Defendants from her former church community.

It has since transformed into a maze of motions, proposed amended complaints (often in

fragmentary form and not properly filed), and an ever-changing list of defendants." Doc. No. 34

at 1. The Court warned Plaintiff, a licensed attorney, that "in the future, the Court expects

compliance with the local rules of this jurisdiction regarding how to properly file motions and a

greater degree of care in crafting the documents submitted to the Court." *Id.* In the intervening

months, Plaintiff has continued to file untimely motions that, as discussed below, border on

frivolous, even as she acknowledges that her claims are time-barred.

That said, the matters before the Court are the following: (1) Defendants' Motion for

Summary Judgment, Doc. No. 74; (2) Plaintiff's Motion and Amended Motion for Default

Judgment, Doc. Nos. 78, 91; (3) Plaintiff's Motion for Reconsideration of the Court's October 4,

2011 Order Denying Plaintiff's Amended Motion for Leave to File a Third Amended Complaint,

Doc. No. 83; and (4) Plaintiff's Motion to Withdraw Admissions, Doc. No. 84.  The Court has

reviewed the motion papers submitted by the Parties and finds that no hearing is necessary. *See*

Md. Loc. R. 105(6) (D. Md. 2010). For the reasons that follow, the Court **GRANTS** Defendants'

Motion for Summary Judgment and **DENIES** Plaintiff's motions.


I.      **FACTUAL & PROCEDURAL BACKGROUND**

        The following factual summary, which the Court adopts from its prior Memorandum

Opinion, consists of undisputed facts and Plaintiff's version of the disputed facts, except when

otherwise noted. Plaintiff describes herself as a lay Bible teacher who has planned, for the past

35 years, to enter full time ministry. Plaintiff is committed to being ordained as  a pastor within

her religious denomination: the Assemblies of God.

        In November 2007, Plaintiff met with Sullivan McGraw, the senior pastor of the New

Life Worship Center ("Worship Center"), to seek his advice and possible mentorship to advance

her goal of becoming a pastor.  Mr. McGraw indicated that he would be willing to oversee

Plaintiff's ministry by offering spiritual and financial support; in return, he requested a share of

the proceeds from any church she might later create.  As part of their new relationship, Mr.

McGraw also asked Plaintiff to join his church, complete certain classes, and contribute 10

percent of her income to the church.  Plaintiff accepted the offer, with the understanding that she

would begin the process the following year, after addressing certain family matters.

        Approximately 11 months later, Plaintiff began to attend services at the Worship Center.

During the first Sunday service Plaintiff attended, she alleges that Mr. McGraw, while delivering

his sermon, performed jumping jacks, sit-ups, and push-ups, and "split his pants." According to

Plaintiff, Mr. McGraw called upon other men to do sit-ups and remarked that some older men are

still strong. Plaintiff explains that she worried that Mr. McGraw's wife, Jacqueline, might

interpret her husband's actions as efforts to show off for Plaintiff. Plaintiff took steps to head off

this perception before it took root by, for example, greeting Mrs. McGraw instead of Mr.

McGraw when they would stand together in a greeting line. Nonetheless, according to Plaintiff,

Mrs. McGraw grew jealous and spoke in a negative manner about Plaintiff to other members of

the church.

During a subsequent sermon, Mr. McGraw asked members of the audience to smile.

Plaintiff asserts that a male church member sitting next to Plaintiff said to her, "[y]ou know, it's

you he's talking about. He told some of the guys that you never smile and he wants to see

whether anything is wrong with your teeth."

Despite the difficulties Plaintiff was experiencing with the McGraws, she began to

experience a deep joy in God, which she relates that she expressed by performing solo dances

characterized by rapid foot movements. At first, Plaintiff sought to hide her dancing. However, a

friendly worship leader urged her to come to the front of the church when dancing, and Plaintiff

complied with the request. Some members of the congregation appreciated the dances, but

according to Plaintiff, Jacqueline McGraw and her friends criticized Plaintiff's conduct.

At the conclusion of a service that took place on or about July 12, 2009[1], Plaintiff walked

toward the back of the church where Mr. McGraw was greeting members. As Plaintiff reached

out her arms to hug Mr. McGraw as a greeting, she asserts that the rubber sole on her new high

heels failed to slide along the flooring, causing her to trip and fall forward slightly. Although

Plaintiff states that Mrs. McGraw did not see the episode, she reports that several of Mrs.

---

[1]Plaintiff originally alleged that this service took place on August 9, 2009 but has subsequently admitted that she was incorrect about the date of the alleged defamation.

McGraw's friends did witness what took place, and they reported the occurrence to Mrs. McGraw.

In Plaintiff's Amended Complaint, she alleged that between August 9, 2009 and August 22, 2009, Defendants Sullivan McGraw, Jacqueline McGraw, along with certain wives of church board members, conspired to publicly accuse her of sexually molesting Defendant Sullivan McGraw. Plaintiff alleged that these individuals prepared a pre-sermon skit entitled "The Party Crasher," and they explained to skit participants and other church members that Plaintiff was to be the unnamed subject of the skit. The fictitious setting for the two-minute skit was a party room in which a group of friends are gathered together. Their gathering gets interrupted when the main character of the skit—the party crasher—bursts into the room and performs a solo dance characterized by rapid foot movements. According to Plaintiff, the dancer role was played by a male actor.

The following events were alleged in Plaintiff's Second Amended Complaint but have been contradicted by evidence revealed during discovery. At the morning service on July 12, 2009, Plaintiff contends that The Party Crasher was performed in front of the 800-person congregation immediately before Mr. McGraw's sermon.[2]  According to Plaintiff, a significant number of members in attendance recognized her as the "Party Crasher." When introducing his sermon, Mr. McGraw stated that the party crasher was "certainly a great dancer." According to Plaintiff, he then "walked from the front of the church, stood next to Plaintiff, and stated that a female member had intentionally rubbed her breasts against him during a recent meet and greet." According to Plaintiff, Mr. McGraw told the congregation that Mrs. McGraw was not with him at the time the event occurred, but had been informed of it later. He allegedly explained that "the member who did this purports to attend church in order to worship God[,] but in fact, attends

---

[2]Note again that Plaintiff originally contended that the skit was performed on August 23, 2009.

church[] in order to seduce men," and he directed "that church members should avoid contact with the female member who had molested him." Plaintiff alleges that before the conclusion of the sermon, Mr. McGraw returned to the front of the church and asked Mrs. McGraw to come over to him and visually demonstrate the actions of the transgressing woman. Plaintiff contends that Mrs. McGraw stood next to Sullivan McGraw, leaned forward and "rubbed her breasts back and forth rapidly against her husband's chest."  However, an authenticated DVD recording of the July 12, 2009 service made available during discovery does not depict any of the above events. *See* Doc. No. 75 Ex. 1.

Plaintiff alleged that Mr. and Mrs. McGraw intended their statements and actions to refer to Plaintiff and that some members of the congregation did in fact interpret the statements as referring to Plaintiff. Plaintiff additionally claims that the sermon was "recorded, duplicated, rebroadcast online and stored for future distribution." Plaintiff further alleges that at a church picnic immediately following the service, a "vast majority of members ignored Plaintiff, sneered at Plaintiff, or spoke to Plaintiff in a harsh, judgmental manner." Plaintiff contends that of the hundreds of church members in attendance, between three and five people spoke to Plaintiff in a friendly manner during the course of the picnic.

Several days later, Plaintiff explains that she arranged a telephone conference with the McGraws. Plaintiff states that she did not reveal her suspicion that the sermon referred to herself; she simply asked whether they "fully understood how much damage the statements … could be to a female and whether they had spoken with the woman described in the sermon beforehand." Plaintiff claims that Mr. McGraw denied that the sermon was based on an actual person or event. Plaintiff states that she reminded him of his statement that an actual person had rubbed her breasts against him and that Mrs. McGraw had learned about the incident from witnesses.

Plaintiff told them that it was wrong to make the statements about a woman's sexual purity without making certain that the statements were accurate. Mr. McGraw allegedly replied: "[a]sk my wife. Ask her my wife [sic] whether she spoke with the person first. Jacqueline, you answer her question." Plaintiff asked why Mrs. McGraw's friends stood and cheered when Mr. McGraw denigrated the unidentified woman. Mr. McGraw allegedly replied, "[m]aybe they had problems with the person too."

Plaintiff seeks damages for her emotional distress and for damage to her reputation. She alleges that over time, she has created for herself a commercial identity, which includes a reputation for sexual purity, and that maintaining this identity has an essential financial value to Plaintiff because she intends to earn her living through preaching, and maintaining a reputation for sexual purity is an essential qualification for every female preacher. *See* Second Am. Compl., Doc. No. 36 at 20-25.

In October 2009 Plaintiff alleges she wrote a letter to Mr. McGraw demanding a retraction. Mr. McGraw did not reply. She filed this lawsuit on August 23, 2010, seeking recovery on theories of defamation *per quod*, defamation *per se* and invasion of privacy. Defendants subsequently filed a Motion to Dismiss for failure to state a claim. *See* Doc. No. 7. The Court denied Defendants' motion, finding that Plaintiff had pled her defamation claims sufficiently to permit discovery.  *See* Doc. No. 34.  Now, with the benefit of discovery, the Court now considers Defendants' Motion for Summary Judgment as well as a variety of motions by Plaintiff.

## II.      STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  The Court must "draw all justifiable

inferences in favor of the nonmoving party, including questions of credibility and of the weight

to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520

(1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

To defeat a motion for summary judgment, the nonmoving party must come forward with

affidavits or other similar evidence to show that a genuine issue of material fact exists.  *See*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  While the

evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or

her favor, a party cannot create a genuine dispute of material fact through mere speculation or

compilation of inferences.  *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir.

1998).  Additionally, hearsay statements or conclusory statements with no evidentiary basis

cannot support or defeat a motion for summary judgment.  *See Greensboro Prof'l Fire Fighters*

*Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

## III.    ANALYSIS

The central motion presently before the Court is Defendants' Motion for Summary

Judgment.  Before addressing this dispositive motion, the Court will first resolve a number of

secondary motions brought by Plaintiff.

A.    Plaintiff's Motion for Reconsideration of the Court's October 4, 2011 Order
      Denying Plaintiff's Amended Motion for Leave to File a Third Amended
      Complaint

On October 4, 2011, the Court issued an Order denying Plaintiff's Amended Motion for

Leave to file a Third Amended Complaint to include a claim for common law fraud. *See* Doc.

No. 67.  Plaintiff's motion was denied on grounds that it was untimely, as it was filed well after

the June 13, 2011 deadline set by the Court's Scheduling Order. Moreover, Plaintiff had failed to

show any reasonable justification for the delay in amending her Complaint to add the common

law fraud claim when, by her own admission, she had been aware of the alleged fraud for over

two years. *Id.* at 2.  Plaintiff's present motion to reconsider that decision is again untimely.

Motions to Reconsider must be filed no later than 14 days after the entry of an Order. *See* Md.

Loc. R. 105.10 (D. Md. 2010). Plaintiff's present Motion was filed more than two months after

the 14-day deadline.   Given Plaintiff's multiple egregious failures to comply with the Local

Rules in this action or to show good cause for her untimely filing, Plaintiff's Motion for

Reconsideration is denied.


### B.      Plaintiff's  Motion and Amended Motion for Default Judgment

Plaintiff seeks the ultimate sanction of default judgment against Defendants pursuant to

Federal Rule of Civil Procedure 37(b)(2)(A). Doc. Nos. 78, 91. Rule 37(b)(2)(A) provides a list

of possible sanctions for failure to comply with a discovery order, including dismissal of a claim

or default judgment.  Plaintiff argues that Defendants engaged in spoliation of evidence

warranting a default judgment.  For the following reasons, Plaintiff's motion is denied.

First, any sanction under Rule 37(b)(2)(A) would be inappropriate here.  Rule

37(b)(2)(A) applies only when a party has failed to obey a court order—specifically, a discovery

order. *See* Fed. R. Civ. P. 37(b)(2)(A). Since Plaintiff does not contend that Defendants violated

a discovery order in this action, the only issue is whether the Defendants engaged in spoliation of

evidence. To find spoliation that is sanction-worthy, the party claiming spoliation must show

that:

> (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind;' and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*Victor Stanley, Inc. v. Creative Pipe Inc.*, 269 F.R.D. 497, 520-21 (D. Md. 2010) (citing

*Goodman v. Praxair Serv., Inc.* 632 F. Supp. 2d 494 (D. Md. 2009)).

The majority of Plaintiff's Motion for Default Judgment centers around her allegation that defense counsel intentionally misrepresented the company who videotaped Plaintiff's deposition to the Plaintiff in an effort to frustrate her efforts to obtain a copy of her deposition. Plaintiff provides little evidentiary support that she was intentionally misled.[3] Even assuming *arguendo* that these allegations were sufficient to prove that defense counsel intentionally misled Plaintiff, they do not support a claim of spoliation. Plaintiff makes no claim that the deposition recording has been destroyed and admits that she discovered who the actual videographer was prior to making any phone calls to Veritas. *See* Doc. No. 78 Ex. 1 at 3.

Similarly, Plaintiff's claim that Defendants removed material evidence from the church website is also unsupported. Even accepting all of Plaintiff's allegations as true, Plaintiff admits in her motion that she obtained a copy of the website prior to the alleged alteration. *See* Doc. 78 Ex. 1 at 11. Since Plaintiff has a copy of the unaltered website, she cannot be prejudiced by the

---

[3] Plaintiff supports her allegations with the following evidence. She attaches a copy of an e-mail sent by defense counsel that informed her that the videographer who had taped a deposition was available through a company called Veritas, located in Philadelphia, Pennsylvania. Based on this e-mail, Plaintiff phoned Veritas about obtaining a copy of the deposition. During that phone call she was told by the Veritas employee that another party was on hold inquiring about her case. Plaintiff explains that the Veritas representative informed her that she could not find the case in the computer, but promised to return her phone call. However, the Veritas representative never returned the call. When Plaintiff called Veritas the following week, a different representative informed her that there was no possibility that Veritas had anything to do with the lawsuit. Finally, during a third phone call with Veritas, the same representative reversed her position, according to Plaintiff offering a "plausible explanation" for why defense counsel might have provided their name. *See* Doc. No. 86 at 8-10. From this, Plaintiff concludes that defense counsel or his agent was the party on hold during her first call to Veritas, and that Defendants attempted to persuade Veritas not to call Plaintiff back. *See* Doc. No. 78 Ex. 1 at 4-6. To support these allegations, Plaintiff provides recordings of two of the phone calls. Doc. No. 78 Ex. 2.

alleged failure to preserve.  *See Victor Stanley*, 269 F.R.D at 531 ("for the court to issue

sanctions, the absence of the evidence must be prejudicial to the party alleging spoliation of

evidence.").  Finally, Plaintiff's motion contains a laundry list of additional allegations of

misconduct.[4]  However, since these allegations are completely devoid of any factual or

evidentiary support, they do not support a finding of default judgment against Defendants.

Therefore, Plaintiff's Motion for Default Judgment is denied.

Plaintiff filed an Amended Motion for Entry of Default Judgment nearly two months

after filing her original motion. Doc. No. 91. The Court has already noted on several occasions

its concerns with Plaintiff's abusive motions practice of continually amending and

supplementing her motions to the prejudice of Defendants.  *See* Doc. Nos. 34, 67.  Accordingly,

Plaintiff's Motion for Leave to Supplement and Amend her Original Motion, Doc. No. 91, is

denied.  Moreover, the amended motion does not address the grounds on which the Court denies

Plaintiff's original motion. Therefore, Plaintiff's amendment is also denied as futile.


C.      Plaintiff's Motion to Withdraw Admissions

Plaintiff additionally seeks to withdraw certain responses she made to Defendants'

request for admissions, as well as unspecified portions of her deposition testimony.  Doc. No. 84.

Specifically, Plaintiff seeks to withdraw her admission that the DVD recording of the sermon

containing the alleged defamatory remarks is genuine, and that the sermon containing the alleged

---

[4] Plaintiff provides a list of 12 instances of misconduct by Defendants, their counsel, and other parties, including: (1) removing material evidence from the church website; (2) calling Plaintiff names; (3) lying to the Court about material matters; (4) refusing to provide Plaintiff relevant documents during discovery; (5) presenting Plaintiff with spliced and/or edited versions of primary evidence; (6) accusing the videographer who offered Plaintiff's deposition for sale of refusing to guarantee in writing that Plaintiff's deposition had not been altered or modified; (7) making materially false statements to the Court; (8) withholding the names of persons who could have provided relevant information to Plaintiff; (9) strategically withholding evidence from Plaintiff until after the strategic advantage had expired; (10) frustrating Plaintiff's good faith efforts to resolve discovery disputes; (11) engaging in communication with the Court that should be deemed ex parte; and (12) inventing excuses for deliberate choices Defendants made and inventing excuses for those choices retroactively. *See* Doc. No. 78 Ex. 1 at 10.

defamation took place on July 11, 2009 rather than on August 22, 2009 as originally alleged.

Doc. No. 84 at 3.  Plaintiff cites to Federal Rule of Civil Procedure 36(b) in support, arguing that

she wrongfully relied on allegedly altered recordings when she made those admissions.

Rule 36(b) permits withdrawal of an admission if it "would promote the presentation of

the merits of the action" and "if the court is not persuaded that it would prejudice the requesting

party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b).

At the outset, the Court notes that Plaintiff has not submitted any evidence that the

sermon recordings, which have been authenticated, were altered.  Plaintiff supports her

allegation solely on the basis that the two recordings turned over by Defendants appear in

different formats.  The first recording, that of the July 11, 2009 sermon, appears in a "spliced"

format—that is, the entirety of the recording is viewed in three separate segments.  The recording

of the August 23, 2009 sermon on the other hand, consists of one continuous recording.  Based

on this discrepancy, Plaintiff contends that the original recording was edited.

Even unopposed, these allegations alone are insufficient to find that the recordings were

altered.  However, Defendants have presented uncontroverted evidence that the recordings are

indeed authentic.  The church's videographer states in a sworn affidavit that "[t]he DVD is a

true, accurate and genuine copy of the entire video recording of the sermon on July 12, 2009."

Doc. 75 Ex. 6 ¶ 16.  Finally, the Court is suspicious of this eleventh-hour allegation by Plaintiff

unsupported by facts, where Plaintiff has been in possession of the sermon recordings for five

months.

Accordingly, Plaintiff's Motion to Withdraw Admissions does not meet the Rule 36(b)

requirement that such withdrawal would "promote presentation of the merits."  The sermon

recording depicts the very scene where the alleged defamatory statements occurred.  To preclude

11

Plaintiff's admission that the recording was genuine would, in effect, challenge the authenticity

of the recording in the face of uncontroverted evidence, thereby hindering the presentation of the

merits unnecessarily. Plaintiff's Motion to Withdraw Admissions is denied.

> D.      Defendants' Motion for Summary Judgment

Defendants contend that summary judgment is appropriate because Plaintiff's claim for

defamation is time-barred,  there are no facts legally sufficient to establish a claim for

defamation, and  there are no facts legally sufficient to establish a claim for false light invasion

of privacy.  For the reasons discussed below, the Court agrees.

> 1.      Defamation and Defamation *per se*

Maryland imposes a one-year statute of limitations on claims for defamation.  Md. Code

Ann. Cts. & Jud. Proc. §5-105.  The limitations period begins to run on the date the statements

are improperly communicated.  *See Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 316

(Md. Ct. Spec. App. 1995).  For the reasons that follow, the Court finds that the defamatory

remarks alleged by Plaintiff occurred more than one year prior to the filing of the Complaint and

are thus time-barred.

Although Plaintiff originally alleged that the defamatory remarks occurred during an

August 22, 2009 church service, she has since admitted on a number of occasions that the alleged

defamatory remarks occurred on July 12, 2009, more than a year prior to the August 23, 2010

date this suit was filed.  Plaintiff admits in her responses to Defendants' request for admissions

that the skit, the sermon, and the demonstration all occurred on July 12, 2009.  *See* Doc. 75 Ex.3

at 5.  Smith also admitted as much while being deposed. *See* Doc. 75 Ex. 4 at 405-06. As a

licensed attorney, Plaintiff recognizes the legal ramifications of the statute of limitations. In fact,

in her Motion for Default Judgment, Plaintiff states that "Defendants began this litigation with a

right to assert an affirmative defense based on the statute of limitations." Doc. 78 Ex. 1 at 12; *see also* Doc. 75 Ex. 4 at 405 (stating in her deposition: "I don't see things going to a jury.  I see you [the Defendants] filing for summary judgment on the date issue and seeking a statute of limitations defense…[.]").  Accordingly, it comes as no surprise to Plaintiff that her defamation claims are time-barred.

Despite Plaintiff's admission that her claims are barred, she challenges Defendants' Motion for Summary Judgment on the grounds that Defendants engaged in a "pattern of deceitful conduct". Doc. No. 85 at 7.  Based on Defendants' conduct, Plaintiff argues that the Court should strike all evidence in support of Defendants' motion, as well as the affirmative defense of the expiration of the statute of limitations. *See id.* at 13. The alleged deceitful conduct by Defendants includes altering the DVD recording, interfering with Plaintiff's ability to obtain a copy of Plaintiff's deposition testimony, and removing evidence from the church website during the pendency of the instant action. *See id.* at 10.  The Court has already addressed these allegations by Plaintiff.  As detailed above, Plaintiff's allegations of discovery abuses are without merit.  Plaintiff additionally alleges without support that Defendants engaged in "a host of other misconduct." *See id.* None of these assertions dispute that Plaintiff's claims are time-barred.

Moreover, even if Plaintiff's defamation claim was not time-barred, summary judgment is appropriate because Plaintiff cannot make out a prima facie case for defamation.  To prove defamation, a plaintiff must show:

> (1) that the defendant made a defamatory communication-i.e., that he communicated a statement tending to expose the plaintiff to public scorn, hatred, contempt, or ridicule to a third person who reasonably recognized the statement as being defamatory; (2) that the statement was false; (3) that the defendant was at fault in communicating the statement; and (4) that the plaintiff suffered harm.

*Shapiro v. Massengill*, 661 A.2d 202, 216-17 (Md. Ct. Spec. App.1995) (citing *Kairysv.*

*Douglas Stereo Inc.,* 577 A.2d 386 (Md. Ct. Spec. App. 1990)). Additionally, the

defamatory comment must refer to the individual who brings the defamation action. *See*

*AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1005 (4th

Cir. 1990).

Given the evidence of the recorded sermons, Plaintiff cannot prove that Defendants made

any statements which referred to her and which tended to bring about "public scorn, hatred,

contempt, or ridicule." *See Shapiro*, 661 A.2d at 216-17.  In her Second Amended Complaint,

Plaintiff provided sufficiently detailed factual allegations to make out a defamation claim. This

Court found a number of the facts alleged by Plaintiff to be significant in denying Defendants'

Motion to Dismiss.  First, Plaintiff alleged that members of the church were aware of the incident

in which Plaintiff tripped into Pastor McGraw.  Second, Plaintiff alleged that the McGraws told

the actors in the skit and other church members that the skit was about Plaintiff.  Third, Plaintiff

alleged that Pastor McGraw stood next to Smith when making the defamatory remarks.  Finally,

Plaintiff alleged that Pastor McGraw informed the congregation that the episode happened

during a recent church meet and greet, and he stated that his wife was not with him.  *See* Doc.

No. 34 at 15-16.

Plaintiff has not provided any evidence tending to prove any of the above events. Plaintiff

has not shown, for example, that the McGraws were involved in the drafting of the skit.

Moreover, Defendants have provided a sworn affidavit by Linda Huff, the drama coordinator of

the New Life Worship center, stating that neither of the McGraws had anything to do with the

"writing, directing, performance, or any other aspect of the skit."  Doc. 75 Ex. 5 at ¶ 7.

Additionally, no evidence has been offered that the McGraws told other members the skit

referred to Plaintiff, or that any member understood as much. Plaintiff admitted in her deposition

that she has no personal knowledge of anyone who thought the skit was referencing her. *See*

Doc. No. 75 Ex. 4 at 363-65. A review of the DVD recording reveals that Mr. McGraw never

stood next to Plaintiff when making any remarks. It also reveals that Mr. McGraw never made

any comment about an event happening at a recent meet and greet. Without these contextual

clues, Plaintiff cannot prove that Mr. McGraw made any public statements that referred to her.

In fact, the sermon recording demonstrates that the statements alleged in Plaintiff's

Second Amended Complaint were never made.  Plaintiff alleged that Mr. McGraw stated in his

sermon that a female member intentionally rubbed her breasts against him during a recent meet

and greet and that the member responsible for those actions "purports to attend church in order to

worship God but in fact, attends church, to seduce men."  Second Am. Compl. ¶ 59.   As the

Court noted in its prior Memorandum Opinion, a reasonable jury could conclude that such a

statement would lead to "public scorn, hatred, contempt or ridicule." Doc. No. 34 at 15.

However, the recording does not depict this statement, or one even remotely similar made by Mr.

McGraw. *See* Doc. No. 75 Ex. 1. Additionally, Plaintiff agrees that, based on the DVD, no

defamatory statements were made.  *See* Doc. No. 75 Ex. 4 at 340.   Plaintiff has challenged the

authenticity of the DVD, but as discussed previously, her allegations are without merit.

Likewise, Plaintiff cannot make out a claim for defamation *per se*.  Words or conduct are

defamatory *per se* when "their injurious character is a self-evident fact of common knowledge of

which the court takes judicial notice and need not be pleaded or proved." *M & S Furniture Sales

Co. v. Edward J. DeBartolo Corp.*, 241 A.2d 126, 128 (Md. 1968).  Because Plaintiff is unable to

produce evidence in support of her contention that Defendants publically assailed her chastity,

Plaintiff's defamation *per se* claim fails.

2.      False Light Invasion of Privacy

There is some disagreement as to whether the statute of limitations governing claims for

false light invasion of privacy is the same as the one-year limitations period for defamation

claims. *Compare Smith v. Esquire, Inc.*, 494 F. Supp. 967, 970 (D. Md. 1980) (holding that the

limitations periods are the same due to similar policy considerations) *with Allen v. Bethlehem

Steel Corp.,* 547 A.2d 1105 (Md. Ct. Spec. App. 1988) (rejecting the reasoning in *Smith* and

holding that false light claims should be treated like other tort claims and subject to a three-year

statute of limitations).  However, since Plaintiff fails to allege sufficient facts to support a false

light claim as a matter of law, the Court declines to address the issue of which limitations period

applies.

The elements of a claim for false light invasion of privacy are: "(1) publicity in a false

light before the public; (2) which a reasonable person would find highly offensive; and (3) that

the actor had knowledge of or acted in reckless disregard of the publicized matter placing

plaintiff in a false light." *Cambridge Tit. Co. v. Transam. Tit. Ins. Co.*, 817 F. Supp. 1263, 1278

(D. Md. 1992).  Additionally, Maryland courts have noted that false light invasion of privacy

claims "may not stand unless the claim also meets the standards of defamation." *Piscatelli v.

Smith*, 12 A.3d 167, 173 (Md. Ct. Spec. App. 2011) (citing *Crowley v. Fox Broad. Co.*, 851 F.

Supp. 700, 704 (D. Md. 1994)). Since Plaintiff cannot meet the standards for defamation,

summary judgment is also granted as to Plaintiff's false light invasion of privacy claim.


IV.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary

Judgment and  **DENIES** Plaintiff's Motion and Amended Motion for Default Judgment, Motion

for Reconsideration of the Court's October 4, 2011 Order Denying Plaintiff's Amended Motion

for Leave to File a Third Amended Complaint, and Motion to Withdraw Admissions.


  February 23, 2012                                    /s/
            Date                               Alexander Williams, Jr.
                                         United States District Judge